CROSS *v*. CROSS.

DIVORCE—EXTREME CRUELTY—DECREE NOT JUSTIFIED WHERE EACH
  EQUALLY GUILTY.
  Decree of divorce granted to wife on ground of extreme cruelty
  is reversed, on appeal, where record shows that they were mu-
  tually wrong in their attitude toward each other, and that
  defendant, although his conduct was not always commendable,
  was no more at fault than plaintiff.

Appeal from Genesee; Brennan (Fred W.), J.
Submitted October 8, 1930. (Docket No. 33, Cal-
endar No. 35,189.) Decided December 2, 1930.

Bill by Ermina C. Cross against James C. Cross
for divorce. Decree for plaintiff. Defendant ap-
peals. Reversed.

*Cook, Sheppard & Stipes,* for plaintiff.

*Thos. Stockton* (*C. A. Withey,* of counsel), for
defendant.

NORTH, J. The parties to this divorce suit were
married in 1881. Plaintiff, who charges extreme
cruelty, is 67 years of age, and defendant is a year
older. They have three living children, the youngest
is now past 40. The case was heard in circuit court
in September, 1929. The parties were then living
in the same household, but were not occupying the
same bed. Their home was also shared by their son
Ray and the latter's son, who is about 18 years of
age.
  These parties started married life in the home of
defendant's father. At that time neither of them

possessed property of any consequence. Later they lived on a 30-acre farm owned by plaintiff's father; and still later on another farm which also belonged to him. This latter farm was finally purchased by Mr. and Mrs. Cross. After purchasing and selling three or four farms, they established their home where they resided at the time of trial, on Church street in Flint. They have lived there 15 or 16 years. Before coming to Flint to live there seems to have been no domestic difficulty between these parties; but in recent years there has been some considerable trouble and unpleasantness over property matters. By inheritance from their respective families and by mutual industry and economy they have become possessed of property worth $60,000 or upwards. Until they came to Flint, title to their properties seems to have been held jointly. At one time since residing in Flint Mr. Cross was engaged in the automobile business, and it is said incident to this he lost a substantial sum of money. For years he has carried on a farm agency. While the record is not very satisfactory, he claims to have made substantial sums in real estate transactions. He testified that individually he owned $41,000 of property, while the joint holdings had decreased to $33,000. The record conclusively shows that the manner of holding and managing their property is the real cause of trouble between these parties.

In support of her charge of extreme cruelty, Mrs. Cross complained that for over two years her husband had occupied a separate room, that he had refused for some five or six years to take her in his automobile, that on at least two occasions he notified merchants not to sell her goods on credit, that in the home he assumed an unkind attitude toward her in that he would not carry on a conversa-

tion with her and for long periods of time would not speak to her at all, that he did not furnish her with money as he should have done in view of their station in life, that she was compelled to borrow $18 to use incident to securing treatment for her eyes, that she at times took roomers into the home, did some baking, sewing, washing, etc., for others than her own family as a means of securing money for her own use.

Mr. Cross filed an answer and offered proof that their unpleasant relations were caused solely by plaintiff's persistent nagging concerning property matters. He denied his failure to provide a good home and such means to meet plaintiff's personal needs as were reasonably necessary.

While the trial judge granted a decree to plaintiff and provided for a division of property, we have found the record very unsatisfactory, and we deem it insufficient to justify such a disposition of the case. We cannot review the testimony in detail. In its main features plaintiff is largely uncorroborated; and her own testimony discloses that she is somewhat vitriolic and inclined to be unfair. She called four ladies as witnesses to sustain her case. Of these Mrs. Welch, who had roomed with these parties about three months in 1926, testified:

"Mr. Cross did not talk to Mrs. Cross that I heard.  *  *  *  They have a beautiful home, well furnished.  *  *  *  I never heard Mrs. Cross attempt to talk to him. Apparently they did not talk to each other."

Mrs. Phillips testified:

"They got along fairly. I never heard any bickering between Mr. and Mrs. Cross. I knew of her having an automobile, rode in it two or three

times. * * * Each of them run their own machine. I thought Mr. Cross, as a husband, was distant, wasn't sociable, but I haven't anything to say against him. He is a reserved man.''

Mrs. Postum, who had visited the Cross home off and on for the last 20 or 25 years, on cross-examination testified:

"I have known Mr. Cross a good many years. Always considered him a good citizen and he was a good husband years ago; I don't know late years, not a thing. As far as I know, he is a good husband.''

Another of plaintiff's witnesses, who had known these parties many years and visited them "about once a year or so," testified:

"I have been there when I noticed it was not very pleasant. He would come in the house and not speak to her. * * * I guess they got along very nicely; it wasn't pleasant there. * * * He didn't even speak to me. It didn't matter, though. I didn't see her talk to him. She didn't attempt to.''

As against plaintiff's case, thus weakly corroborated, defendant not only gave his own version of justification and explanation, but he was corroborated by all three of the adult children of these parties, by a sister of plaintiff, and by other witnesses. In tabloid form, their testimony tends quite conclusively to establish defendant's contention that plaintiff had become arbitrary and had perpetually complained and nagged about her own condition and home surroundings and that all of this grew out of her dissatisfaction with the way in which their property rights were held. Defendant's attitude, as disclosed by the record, was not wholly commendable,

but it was by no means without provocation. As bearing upon his failure to provide plaintiff with means, it is disclosed that for years she has had money on deposit in at least three separate banks. In 1926 she purchased an automobile. Some time later she disposed of this for approximately $800 and retained the proceeds, as she had a right to do. Her redirect-examination reveals that at one time she drew $500 from the bank, at another $475, and, a few months before filing her bill, $591. On cross-examination she explained:

"I put $500 of it in Consumers Power, that is where it will stay. I presume I used up the balance of it."

Plaintiff's claim of not having had sufficient funds is wholly without merit. In so far as she took roomers or did work outside of her own household duties, it was of her own volition, and she seems to have had the proceeds of her own efforts. At times she had help in her own household. Among other witnesses, defendant produced a next door neighbor who seems to have been friendly to both these parties. Mrs. Cross on occasions had told her troubles to him. He said her complaint was along the line of property being sold, that she did not know about the business affairs, and she complained generally about money matters. He also testified:

"I would not want to say I had seen anything unpleasant in the house, not very talkative, but I never heard them quarrel, anything of that kind. Mr. Cross never complained to me a word about his wife, not a word. * * * There have been times she (Mrs. Cross) has rushed over to our house and told her troubles. She is like some people I have seen, gets disturbed and tells her troubles."

·We forego further reference to the testimony. Both of these parties have worked hard. By industry and economy they have accumulated property. It is to be regretted that their mutually wrong attitude toward each other has in a large measure deprived them of its full enjoyment. The record does not sustain a conclusion that defendant is more at fault than plaintiff. We think a decree of divorce should not have been granted. The decree of the lower court is reversed, and the bill dismissed, but without costs.

. WIEST, C. J., and BUTZEL, CLARK, McDONALD, POTTER, SHARPE, and FEAD, JJ., concurred.